NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

TONY MCNAIR,

       *Plaintiff*,              Civil Action No. 14-2122

v.                                  OPINION

                                      July 1, 2015

CAROLYN W. COLVIN,
**Acting Commissioner of Social Security**,

       *Defendant*.
_____

**ARLEO**, UNITED STATES DISTRICT JUDGE.

    Before this Court is Plaintiff Tony McNair's request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") decision with respect to Plaintiff's application for Supplemental Security Income. Plaintiff argues in the alternative that (1) the Commissioner's decision should be reversed with an award of benefits because there is substantial evidence in the record to support a finding of disability; or (2) the numerous deficiencies in the Commissioner's decision require the case to be remanded for reconsideration. For the reasons set forth in this Opinion, the Court finds that the Commissioner's decision is supported by substantial evidence and therefore must be **AFFIRMED**.

**I.**   STANDARD OF REVIEW AND APPLICABLE LAW

    **A. Standard of Review**

    This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial evidence

to support the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).

**B. The Five-Step Disability Test**

In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial

2

gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment or its equivalent. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner must ask at step four whether the claimant has residual functional capacity ("RFC") such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. If so, the claim for benefits must be denied. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Under 42 U.S.C. § 405(g) and Third Circuit precedent, this Court is permitted to "affirm, modify, or reverse the [Commissioner's] decision with or without a remand to the [Commissioner] for a rehearing." Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984); Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 865-66 (3d Cir. 2007). While an outright reversal with an order to award benefits is permissible in the presence of a fully developed record containing substantial evidence that the claimant is disabled, the Court must order a remand whenever the record is incomplete or lacks substantial evidence to justify a conclusive finding at one or more of the five steps in the sequential analysis. See Podedworny, 745 F.2d at 221-22.

## II. Background

### A. Procedural History

This case arises out of Plaintiff's application for supplemental security income filed on December 18, 2009, which was denied initially on May 13, 2010, and upon reconsideration on January 20, 2011. Tr. 19. Plaintiff then sought review before an administrative law judge, and a hearing before the Honorable Barbara Dunn (the "ALJ") occurred on June 4, 2012. Id. Following the hearing, the ALJ issued a decision on August 30, 2012, in which she found that Plaintiff was not disabled at step five; that is, jobs existed in significant numbers in the national and regional economy that Plaintiff could perform. Tr. 21-26. Plaintiff then sought review before the Appeals Council, a request that was denied on January 31, 2014. Tr. 1. Having exhausted his administrative remedies, Plaintiff then timely filed the instant action on April 4, 2014.

### B. Factual Background

Plaintiff is a fifty-year-old man who alleged in his application for supplemental security income that his disability began on June 6, 2006. Tr. 155. Prior to June 6, 2006, Plaintiff worked as a forklift operator and garbage man. On that date, Plaintiff was hit by a truck and fractured both

4

ankles, and he has not worked since the accident. Tr. 33, 180. Plaintiff alleges he is unable to perform his past work or any other work because of the pain in his ankles and his depression. Tr. 51, 276. In addition, he has a history of substance abuse and suffers from asthma. Tr. 244-248, 276. During the hearing with the ALJ, Plaintiff amended the onset date to December 17, 2009. Tr. 37. On this date, Plaintiff was assaulted with a stick and suffered a concussion. Tr. 231, 259.

As a result of the accident on June 6, 2006, Plaintiff spent one month in the hospital after receiving surgery that repaired his right ankle fracture using screws and plates. Tr. 33, 251. Podiatrist Keith D. Cook, D.P.M., saw plaintiff on January 21, 2009, when Plaintiff complained of chronic pain and difficulty walking. Tr. 227. Dr. Cook noted that Plaintiff had not been to the clinic in two years and walked without a limp. Id. Dr. Cook suggested only Motrin for the pain. Id. On April 14, 2010, state-appointed physician Dr. Mariam Rubbani found that Plaintiff has arthritis, but he is generally fit and strong. See Tr. 250. Thus, while the ankle injuries are well-established in the record, neither the treating physician nor the state-appointed physician found Plaintiff to be significantly limited in his ability to move about.

In addition to the alleged physical limitations, Plaintiff also complains of depression and anxiety. On April 1, 2010, Plaintiff complained to Dr. Yousef Masood of anxiety and mild depression, but Plaintiff denied having any functional limitations. Tr. 244. Dr. Masood prescribed Plaintiff with a prescription pain medication, a muscle relaxer, an anti-depressant, ointment for a fungal skin infection, and an inhaler for asthma. Tr. 201. On December 15, 2010, Dr. Alexander Iofin diagnosed Plaintiff with psychotic disorder and depressive disorder, and assigned him a 62 for Global Assessment of Functioning. Tr. 276. On January 19, 2011, Dr. Herman Huber found that even if Plaintiff experiences auditory hallucinations, they do not interfere with his functioning. Tr. 294. Dr. Huber also found that Plaintiff is able to follow simple instructions and adapt in work-

like settings. Id. Thus, while Plaintiff's depression is well-established in the record, neither the treating physician nor the state appointed physician found that the depression or mental impairments significantly limited his daily life.

### C. The ALJ's Decision

In her August 30, 2012, decision, the ALJ first noted that Plaintiff was not engaging in substantial gainful activity since the application date of December 18, 2009, and that Plaintiff suffered from the following severe impairments: (1) degenerative joint disease of bilateral ankles; (2) fracture of left orbital; (3) status-post closed bimalleolar; (4) status-post right ankle open reduction internal fixation; (5) psychotic disorder; (6) depressive disorder; (7) history of substance abuse; (8) cellulites; and (9) asthma. Tr. 21. Having found that Plaintiff satisfied steps one and two of the analysis, the ALJ moved on to step three, in which she found that Plaintiff's impairments or a combination thereof did not meet or equal a listed impairment. Id.

In reaching that determination, the ALJ credited the treating and examining physicians, as well as Plaintiff's Function Report. Tr. 22. With respect to Plaintiff's mental impairments, the ALJ specifically considered Listings 12.03 and 12.04. Id. The ALJ noted that Dr. Iofin found Plaintiff to be oriented and not delusional, paranoid, or psychotic. Id. With respect to Plaintiff's physical impairments, the ALJ specifically considered Listing 1.00 for musculoskeletal systems. Id. The ALJ noted that no doctor on record found Plaintiff's complaints to rise to the level of any listed impairment. Id. The ALJ also considered Plaintiff's Function Report in which he indicated he could care for himself and use public transportation. Id. Furthermore, the ALJ considered Plaintiff's physical and mental impairments in combination and found Plaintiff did not meet a listed impairment. Tr. 21.

The ALJ then moved to the RFC determination where she again applied the physicians' findings and the Function Reports and found that Plaintiff could perform slightly more than sedentary work, as defined at 20 C.F.R. 416.967(a). Tr. 23. Specifically, the ALJ concluded Plaintiff can occasionally climb ramps or stairs, balance, stoop, and crawl, but he can never climb ladders, ropes, or scaffolds. Id. The ALJ also included the following limitations based on Plaintiff's asthma and mental limitations: (1) Plaintiff must avoid even moderate exposure to pulmonary irritants, and (2) Plaintiff can follow only one to two step instructions. Id. The ALJ based the RFC determination on an extensive review of both objective medical records and Plaintiff's subjective testimony. See Tr. 24. In light of Plaintiff's RFC, the ALJ ultimately found Plaintiff to be unable to perform his past work as a forklift operator and garbage man after crediting the testimony of the vocational expert (the "VE"). Tr. 25.

The analysis then moved to step five. The ALJ credited the VE's opinion that given Plaintiff's RFC, Plaintiff was able to perform jobs such as assembler, scale operator, and preparer. Tr. 26. Finding the number of jobs available in those occupations to be significant, the ALJ entered a finding of "not disabled." Tr. 27.

## III. Discussion

Plaintiff challenges the ALJ's determination at each of steps three through five. The Court will address each step in turn.

### A. The ALJ's Step Three Determination

Plaintiff argues the ALJ erred in finding that Plaintiff's limitations did not meet or equal a listed impairment. This Court disagrees.

While Plaintiff argues he meets a listed impairment, he does not point to which one he believes he meets. The Plaintiff bears the burden of identifying which listed impairment he meets

7

and producing evidence demonstrating that he meets it. 20 C.F.R. § 416.926; Sullivan v. Zebley, 493 U.S. 521, 531 (1990). Plaintiff's failure to specifically identify a listed impairment in the first instance therefore means Plaintiff failed to carry his burden.

Notwithstanding Plaintiff's failure to identify the specific listing he meets, the Court is satisfied that the ALJ's finding is supported by substantial evidence. Regarding Plaintiff's complaints of ankle pain, the ALJ considered Listing 1.00 and found Plaintiff did not meet the criteria. Tr. 23. Listing 1.00 pertains to the musculoskeletal system. In order to meet Listing 1.00, the plaintiff must show that he is unable to ambulate effectively. Examples of ineffective ambulation include the "inability to walk without the use of a walker, two crutches, or two canes . . . the inability to use standard public transportation . . . and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." 20 C.F.R., Part 404, Subpart P, Appendix 1, 1.00B2(b)(ii). Plaintiff fails to demonstrate ineffective ambulation.

To reach her conclusion that Plaintiff did not meet Listing 1.00, the ALJ credited the medical opinions of treating physician Dr. Cook and examining physician Dr. Rubbani. Tr. 227, 250. Dr. Cook found Plaintiff was able to walk and suggested only Motrin for the pain, and Dr. Rubbani found that in spite of arthritis in the ankles, Plaintiff was generally fit and strong. Id. Dr. Rubbani also noted that Plaintiff did not use a cane to get around. Tr. 249. In addition to the objective medical evidence, the subjective evidence of Plaintiff and his sister also supports the ALJ's finding. Tr. 190, 196, 198. Plaintiff acknowledges he sometimes provides meals for himself, does the laundry, and uses public transportation. Tr. 196, 198. Plaintiff's sister, with whom he lives, confirms this. Tr. 190. The ALJ was correct to conclude Plaintiff did not meet Listing 1.00 because it is clear from all accounts on the record that Plaintiff's ankle injury does

not prevent him from walking without assistance. Therefore, the ALJ's finding that Plaintiff's physical limitations do not rise to the level of Listing 1.00 is supported by substantial evidence.

The ALJ also considered Listings 12.03 and 12.04 with respect to Plaintiff's mental limitations and found Plaintiff did not meet the criteria. Tr. 23. Dr. Iofin found that Plaintiff was not delusional, and he was oriented and able to speak coherently. Tr. 275-76. He assessed that Plaintiff had a GAF number of 62, which is clearly in the functional range. See Tr. 276. Dr. Iofin concluded that Plaintiff suffered from depressive disorder and psychotic disorder, but the impairments did not reach two marked limitations or one marked limitation and repeated episodes. Tr. 22. Other medical evidence supports Dr. Iofin's findings. For example, Dr. Huber found that in spite of Plaintiff's mild limitations, Plaintiff was able to follow simple instructions and adapt in a work-like setting. Tr. 294. Subjective evidence also supports the medical evidence. Indeed, Plaintiff acknowledges in his Function Report that he can concentrate, follow instructions, understand, and complete tasks. Tr. 196. The ALJ was correct to conclude that Plaintiff did not meet Listings 12.03 or 12.04 because the record is clear that Plaintiff's mental limitations do not prevent him from following simple instructions or adapting in a work-like setting. Therefore, the ALJ's finding that Plaintiff's mental limitations do not meet Listings 12.03 or 12.04 is supported by substantial evidence.

Plaintiff argues that he meets a listed impairment when his impairments are considered in combination. This argument also fails. The ALJ explicitly stated at the outset of her step three analysis that she had considered Plaintiff's impairments both individually and in combination and found that they did not meet any listed impairment. Tr. 21. Given the ALJ's explicit statement that she had considered Plaintiff's impairments in combination, this Court has no "reason not to

9

believe" that the ALJ actually considered the impairments in combination. Morrison ex rel. Morrison v. Comm'r of Soc. Sec., 268 F. App'x 186, 189 (3d Cir. 2008).

In sum, the Court is satisfied that the ALJ's finding at step three was supported by substantial evidence.

### B. The ALJ's RFC Determination

Plaintiff contends that the ALJ erred in excluding his claimed limitations of anxiety, hallucinations, and inability to sit in rendering the RFC determination. The Court finds, however, that the ALJ's RFC determination is supported by substantial evidence in the record. Moreover, there is little evidence in the record to support inclusion of the additional limitations for which Plaintiff argues. The ALJ found Plaintiff to be capable of performing sedentary work because he can sit for at least six hours in an eight-hour workday and can stand or walk for three hours. Tr. 23. The ALJ included two additional limitations: (1) he must avoid even moderate exposure to pulmonary irritants, and (2) he is limited to one to two step instructions. Id. Here, the ALJ provided extensive analysis of both the objective medical evidence and Plaintiff's subjective complaints in reaching this RFC determination. Tr. 23-25.

Plaintiff's argument that the ALJ should have included a limitation on his ability to sit is belied by the evidence in the record. Indeed, Dr. Rubbani found that while Plaintiff does have limited use of his ankles, he does not suffer from sensory, reflex, or muscle loss in his ankles and is able to walk at a reasonable pace without the help of a handheld device. Tr. 24, 249-50. Other objective medical evidence in the record supports Dr. Rubbani's findings. For example, Dr. Cook, Plaintiff's treating physician, found that Plaintiff walked without difficulty and only suggested Motrin for the pain. Tr. 227. Plaintiff's subjective testimony further supports the ALJ's decision to exclude any limitations on Plaintiff's ability to sit, since Plaintiff admits in the Function Report

that he is able to sit. Tr. 196. Therefore, the ALJ's decision to exclude from the RFC any limitation on Plaintiff's ability to sit is supported by substantial evidence.

In addition to the physical limitations acknowledged in the RFC, the ALJ took into account Plaintiff's mental limitations by limiting Plaintiff to one to two step instructions. Tr. 23-25. Plaintiff argues, however, that the ALJ should have included limitations based on his hallucinations and anxiety in the RFC determination. The medical evidence demonstrates otherwise. Even if Plaintiff suffered from hallucinations and anxiety, those ailments did not limit him in any meaningful way. Dr. Iofin noted that Plaintiff complained of hallucinations and anxiety, but concluded that Plaintiff's symptoms were only mild to moderate. See Tr. 276. Plaintiff argues that the ALJ should have given more weight to Dr. Huber's findings, but those findings are not inconsistent with Dr. Iofin's assessment. Although Dr. Huber noted Plaintiff's complaints of hallucinations and anxiety, he explicitly found that they did not interfere with Plaintiff's ability to function. Tr. 294. In addition, Dr. Huber concluded that Plaintiff was able to execute simple instructions and adapt in a work-like setting. Id. Plaintiff's Function Report also supports the ALJ's RFC determination. Tr. 195-96. There, Plaintiff acknowledges that his limitations do not affect his ability to concentrate, follow instructions, understand, complete tasks, or get along with others. Tr. 196. The ALJ's decision to exclude from the RFC any limitation based on Plaintiff's alleged anxiety and hallucinations is therefore supported by substantial evidence.[1]

---

[1] Plaintiff also argues the RFC should include additional limitations in the context of the hypotheticals posed by the VE at step five. While the ALJ posed a hypothetical to the VE which limited Plaintiff to being off-task twenty percent of the time, there is nothing in the record that requires the incorporation of this limitation into the RFC. Dr. Huber and Dr. Iofin found only mild to moderate limitations, and the ALJ appropriately incorporated the mental limitations into the RFC by limiting Plaintiff to one to two step instructions. Tr. 23.

There is ample evidence on which the ALJ based her determination of the RFC, and there is no evidence, other than Plaintiff's own opinion, that contravenes the determination. The Court could list myriad other ways in which the ALJ weighed the evidence, but the Court is satisfied that the ALJ provided a "clear and satisfactory explication of the basis on which [her RFC determination] rests." Cotter v. Harris, 642 F.2d 700, 704 (3d. Cir. 1981). Accordingly, the Court declines to disturb the ALJ's RFC determination.

### C. The ALJ's Step Five Determination

Plaintiff argues that two of the three jobs presented by the VE are inconsistent with the RFC. He claims the job of scale operator and preparer would expose him to pulmonary irritants, and the RFC prohibits even moderate exposure. Even if this is accepted as true, the job of assembler is not inconsistent with the RFC. The three jobs presented by the VE are "merely examples" of jobs that Plaintiff can do, instead of an exhaustive list. Jones, 364 F.3d at 506. In addition, the VE testified that approximately 25,000 such jobs exist nationally and 800 regionally– amounts that clearly satisfy the "significant numbers" requirement. See Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (finding 200 total regional jobs to be "clear indication" that significant work in the national economy existed); see also Ahmad v. Comm'r of Soc. Sec., 531 F. App'x 275, 278 (3d Cir. 2013) (citing Craigie with approval and holding that 569 available jobs was sufficient). Therefore, the ALJ's determination at step five was supported by substantial evidence.

### IV. Conclusion

Because the Court finds that the ALJ's decision is supported by substantial evidence, the Commissioner's disability determination is **AFFIRMED**. An appropriate order will follow.

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**